May it please the court, my name is Michael Dunning, Assistant Attorney General for the State of Washington. We do have joint plaintiffs in this case today and the State of Washington would like to take six minutes of our time and reserve six minutes for my colleague, Mr. Dayton. Six minutes, would you do that, Madam Clerk? And we would like to preserve three minutes for rebuttal, thank you. Your Honors, this is a case about citizen enforcement to collect statutory penalties as these plaintiffs were and are authorized to do under CERCLA. The district court wrongly applied CERCLA's timing of review provision to dismiss these claims. These citizen enforcement claims are valid today or as valid today as they were when they were filed. The first issue that occurred to me is, is this a jurisdictional limitation under ARBA? And it looks to me as though the answer in the first line of subsection H is no federal court shall have jurisdiction. So it is jurisdictional. Why would that be mistaken? Well, Your Honor, I'm going to defer to my colleague, Mr. Dayton, to respond to that, the tribe's brief that issue. So continuing, I'll present argument this morning that the provision, that CERCLA's timing of review provision does not apply to these citizen enforcement suits. And my colleague, Mr. Dayton, will show that even if the provision may be seen to apply to these citizen enforcement actions, the plain language of section 9613H2 accepts these enforcement suits. And what I'd like to do first is briefly give you some background and context as it will be useful for the analysis today. Why isn't H2 addressing government enforcement rather than H4, which addressed citizen suits? Well, Your Honor, H2 is an exception, as this court recently found in the city of Rialto case, for potentially responsible parties or PRPs to use to challenge government or citizen enforcement actions. The government is authorized to obviously enforce its actions in section 9606 of CERCLA, but citizens are also authorized to enforce government orders in the citizen suit provision of CERCLA under two conditions. One is we've got to give the government 60 days ahead notice to know what we're doing. And second of all, if the government is diligently prosecuting that order, we as citizens can't bring that claim. But when the government doesn't diligently prosecute that claim, the citizen suit provision allows us to enforce that order. So to answer your question, Your Honor, H2 speaks to not just government enforcement actions. It says any action, and citizens are also authorized to bring those enforcement actions. Does it matter that the order was pulled back by the government? It does not matter that the order was pulled back by the government because, first of all, we amended our complaints to take away our injunctive relief claim to recognize that the UAO, EPA's UAO, had been pulled. But the penalty claim is still alive because Tech Kaminko failed to comply with EPA's order for 892 days. And when we filed our citizen suit claim, that violation was ongoing and that claim still remains live. Now, Your Honor, if not the case here, but if the government and Tech Kaminko had entered into a consent decree, then we would be looking at not a timing of review issue, but we would be looking at a question like the Eco case and some of the other cases cited in the briefing where after the government had failed to enforce and our claims had been validly brought under the statute, which no one disputes here. These claims were validly brought four years ago. The real question is what government action, what can the government do after these claims were validly brought to sort of retake the primary enforcement role? And the answer to that question is if Tech Kaminko had chosen to do a consent decree with the government, then that would matter. But because Tech Kaminko made a choice that it wanted to enter a very unique agreement, not authorized by, not contemplated by CERCLA, that agreement does not preclude these claims. In addition to that, Your Honor, the other reason why that agreement does not affect our ongoing claim for penalties is because that agreement expressly preserves our claim. There's an underlying issue here that strikes me as the likely reason why EPA pulled back and was working this out as a matter of cooperation, and that is that the polluter is in a foreign country and couldn't very well issue an injunction because we can't have U.S. marshals and their deputies drawing their guns and invading a foreign country to shut down a smelter. And working this out cooperatively to keep the river clean seems like the delicate balance that the EPA chose. It looks as though the purpose of that sentence in subsection H4 is so that a citizen's suit for penalties doesn't disrupt the delicate working out of compliance between EPA and the polluter. Why doesn't this fit right into the purpose of that exception to the exception? Well, Your Honor, exception, let me answer the question this, well, let me answer the question directly. H4, the exception for H4 is an exception to the pre-enforcement review bar that allows a certain kind of citizen suit to go forward, and a certain kind of citizen suit is found in section 9659A2, and that's a citizen suit that does directly challenge the government. The A2 suit is specifically allowing a citizen to challenge the government. Here, our suit is an A1 suit. The government issued an order that it failed to enforce. We sought to enforce that, and we sought to seek, or we did seek penalties for text failure to comply with that order. And so our suit is not controlled by the exception in H4, most fundamentally because valid citizen enforcement actions are not subject to the timing of review provision. What Congress provided for is... Why aren't you challenging the government? They decided to pull the order back, but you're seeking penalties under the order that they decided wasn't the best way to solve the problem. That's right, Your Honor, and it's not a challenge at the most fundamental level because this is a citizen suit that Congress authorized when the government failed to diligently prosecute its order. It's almost Orwellian to say that a valid plaintiff suit that took the four corners of EPA's order and sought penalties for failure to comply with that can four years later morph into a challenge of the thing we sought to enforce. Thank you, counsel. Thank you, Your Honor. May it please the Court. My name is Paul Dayton. I'm counsel for Picotus and Duchelle. I have with me in the courtroom today my colleagues Leslie Clark and Richard DeBay. Five years ago, my clients filed a suit against Tecumseh to enforce EPA's unilateral order because Tecumseh refused to comply with it. Tecumseh immediately sought to dismiss that lawsuit, claiming that there was no jurisdiction over it because it operated in Canada. It lost in the district court, and it spent the next several years pursuing every angle of appeal to overcome or reverse that order. It failed. During the pendency of that effort, it entered into an agreement with EPA to perform a remedial investigation and feasibility study closely patterned on the unilateral order that my clients have filed suit to enforce. EPA, in that agreement, Tecumseh made critical decisions, and EPA, that informed the issue before the court today. When it made that agreement with EPA, it could have but did not enter into a consent decree or other administrative resolution of any claims asserted against it under CERCLA. That happens every day throughout the United States. Polluters resolve claims in consent decrees or administrative orders. Had it done so, that order likely would have operated either under res judicata or mootness doctrines to bar continued litigation of this penalty's claim. Tecumseh chose not to. Part of the reason it chose not to is because it had acted in this court to preserve its ability to appeal the district court decision on subject matter jurisdiction. It had told this court that Pocotus's claim for penalties was not moot, and its claim for attorney's fees was not moot. That representation to this court that was accepted by this court in the Pocotus opinion enabled Tecumseh's continued appeal. Unfortunately for Tecumseh, it lost, and it found itself back in the district court facing the very penalties claim that it said survived the agreement that it reached with EPA. So it changed course and said, well, it must be barred by Section 113H, the pre-enforcement bar. It's not. Section H2 of 113H very explicitly says that Section 113H does not apply to an action, and I quote, to enforce an order issued under Section 9606A of CERCLA or to recover a penalty for violation of such order. This is that claim, and Tecumseh does not deny it. The statute squarely accepts the penalties claim that is pending in the district court from the application of Section 113H. Incidentally, do you want to address that jurisdictional issue, the Arbaugh issue? Certainly, Your Honor. Prior to the Arbaugh decision, the Seventh Circuit decision in the Frye case explained that the words jurisdiction did not mean that this was a 12, that 113A should be attacked under Rule 12b-1. It was, in fact, a Rule 12b-6 motion. We maintain, Your Honor, that even after Arbaugh, that's still the right answer because Arbaugh doesn't say that you merely by using the word jurisdiction, something counts as jurisdictional. Surely it did say if Congress ranks something as jurisdictional. It is, but the question is, what does that mean? And if we step back to the Steele case. No court shall have jurisdiction when they say no court shall have jurisdiction. Well, it does say that, Your Honor. But what follows, I think the Steele case that preceded the Arbaugh case explains that jurisdiction is supposed to mean the court's power to adjudicate, not the timing of review or circumstances of review. And so if you look at H-2, for example, it's a timing, or H overall, it's a timing of review provision. Some claims proceed now, some proceed later, but it doesn't deprive the court of the power to adjudicate. It determines when the court may adjudicate. I've been puzzled by that heading because I'm trying to figure out, okay, if they don't proceed now, when do they proceed? Well, they can proceed at the close of enforcement. Once the remedial action, well, it doesn't work in H-2. It doesn't seem to fit there. No, it doesn't. But it does work in H-4 and other aspects of the statute. So to get to the end of the analysis, Your Honor, we don't think, we think it was error of the trial court. We also don't think it made a difference in the trial court decision because I don't think the court considered anything that it could not have considered on a Rule 12b6 motion. So to return to Section H-2, H-2 very specifically says that this case is not covered by 113. So why did the district court rule the other way? The district court saw the very same thing. The district court said, and I quote, the plain language of H-2 seems to indicate that the jurisdiction of bar does not apply to the CODIS penalties claim. The court also noted the district court decision in the MR Vega-Alta case that we had cited to the court that analyzed H-2 or H overall, as we do, recognizing that a penalties claim can go forward, but that a citizen suit penalties claim can go forward, but that a citizen suit challenged the terms of remedial action cannot. And so the court recognized both that the language seems to favor our position, recognized that there's a district court opinion that applied it as we apply it. If an order has been pulled back, why by the EPA, presumably because they thought on balance it was better not to have that order in effect, why isn't it in effect, in practical terms, a challenge to the government's compliance procedures to seek penalties under the withdrawn order? Well, I would answer this in two ways, Your Honor. First of all, under H-2 it doesn't matter. It's wholly irrelevant whether that's regarded as a challenge or not. You understand my concern here. It is evidently the EPA thinks there's a better way to deal with the pollution from the facility than the order because it pulled back the order. Well, I think we don't know what EPA thought, but what we do know is what EPA did, and we know what Tecumenco did. We know it pulled back the order. Right. And they agreed to do that as part of a deal in which Tecumenco would engage in certain activity. It did that against the backdrop of a pending lawsuit for penalties. Tecumenco and EPA could have very easily. And also a pending Supreme Court decision that EPA's powers don't extend to Canadian smelters. Potentially, although at that point the pagodas had won in the district court. But certainly there are reasons for the parties to enter into that agreement. Sometimes people win in district court in the Ninth Circuit and the Supreme Court still doesn't buy it. That's true, Your Honor. But I think we can infer either way as to what EPA's intention was. Because EPA knew there was a lawsuit pending. So did Tecumenco. If they wanted to end it, there was a very simple way to end it. Enter a consent decree or other administrative order that under multiple cases would have resolved the pending suit. The choice by the parties not to, coupled with Tecumenco's representation to the Ninth Circuit that the penalties claim was still alive, demonstrates that the parties did not intend to end the penalties claim. In fact, Tecumenco didn't want it to end. And so here we are with a claim that the parties, both EPA and Tecumenco, expected to proceed. And now Tecumenco wants to turn around and invoke Section 113H. Instead of as enabling its ability to turn around and challenge that order, it now wants to use it to shield itself against enforcement. The statute doesn't work that way. Has the EPA expressed any opposition to the continuation of the citizen suit? No, they haven't, Your Honor. Thank you. Please, the Court. I'm Douglas Floyd, representing the Pelley, with my colleague Christopher McNevin at the table. The critical issue in this case is whether a citizen suit seeking to recover penalties that EPA has conditionally waived for violations alleged of an order that it has withdrawn is a challenge to EPA's selected removal action at the site. We submit that it is. The removal action at the site is not the withdrawn UAO. It is the integrated settlement agreement that the parties entered while this case was pending in this court before decision of Tec's jurisdictional objections that was designed to resolve those objections in a cooperative and pragmatic way. Why aren't we bound by footnote 10 of the prior panel decision? The issue here is not whether the plaintiff's claims have merit or whether they are moot. The question is, are they a challenge to EPA's selected removal action? Wouldn't that have been exactly the same situation at the time? As I understand the prior panel decision, the settlement agreement had been reached, and our court recited what it was apparently told by the parties, that that did not make these claims for civil penalties moot. Yes, Your Honor, that is correct. So what's changed? Well, the settlement agreement was entered after the case had been submitted. We submitted to the court the claims were not moot. But whether they are moot. Why are they moot today? We're not arguing here today that they are moot. We are arguing that there is no present jurisdiction over them. Why was there jurisdiction before? What's changed? There was not jurisdiction, Your Honor, but we did not raise the issue. The case had been briefed and submitted. The settlement agreement was then entered. But you thought circumstances had developed such that there was no jurisdiction. There's no jurisdiction, excuse me, under an obligation to tell the court that, and instead you told the court it was not moot. I don't understand how the case has changed. Well, I would like, Your Honor, to suggest that there is a distinction between mootness of a claim, which goes to whether the claim has merit, and the question of the H-2 jurisdictional bar. And we could have, but did not, urge the H-2 bar after the settlement had been reached. Aren't parties obligated? The court itself is obligated to consider the question of jurisdiction sua sponte. If the settlement agreement changed something, and you think it changed something so the court wouldn't have jurisdiction, I can't imagine you wouldn't say that unless you'd made a tactical decision you wanted to go forward, in which case it might have been a poor decision because you lost. But if we didn't have jurisdiction, if you thought we had jurisdiction then, and you think we didn't have jurisdiction now, and nothing's changed about the settlement agreement in between, I don't see how you can maintain those two inconsistent positions. Well, I'm not maintaining inconsistent positions, Your Honor. You thought we had jurisdiction before. You don't think we have jurisdiction now. How are those not inconsistent? We simply did not argue the case before. And in, for example, the Ford Ord case, this court said that assumptions of jurisdiction with sub salientio are not binding on a subsequent decision of this court. Well, it's not sub salientio. I mean, the court was told about the settlement agreement. It's not like the settlement agreement happened the night before and nobody got around to telling the court. The decision recites the fact of the settlement agreement. If you thought that changed something about the court's jurisdiction, I can't imagine that you wouldn't have said something. Well, perhaps we should have, Your Honor, and we didn't. But the fact remains that... So why shouldn't you be bound by the election not to tell the court that it didn't have jurisdiction? Because the question of subject matter jurisdiction remains open so long as the court has not specifically ruled on it. And that's the specific statement in the Ford Ord case cited in our briefs. And so conceding that perhaps we should have pointed that out at an earlier stage, we submit that there's no preclusion of that issue here and the court must resolve it. Now, the question of a challenge turns on what is EPA's selected remedial action. And we submit the selected action at the site is the entire package, integrated package of provisions contained in the settlement agreement that was designed to resolve this jurisdictional issue. And those involved withdrawal of the UAO issued under CERCLA. What's a UAO? The unilateral administrative order, the original order issued by EPA that's been withdrawn. Its replacement with the settlement agreement, a conditional waiver of penalties, conditional on compliance with the settlement agreement, the naming of an American affiliate of the Canadian corporation, TEC Cominco American Incorporated as the primary responding party and change in the start date and in the compliance and submission dates. All of these provisions were critical parts that enabled this agreement to come forward. Is this a challenge to that agreement? It is for two important reasons. First, the reserve penalties claim has not gone away. It has been conditionally waived, conditional on compliance with the settlement agreement. Waived by EPA. By EPA. That's correct. The agreement explicitly says it doesn't interfere with the rights of others. Well, that's correct, Your Honor, and they may assert those rights at an appropriate time. But the question now is whether they can assert them now to invoke penalties that EPA has said are conditionally waived and that it may or may not assert during dependency of the cleanup in order to assure compliance with the provisions of the settlement agreement. Those penalties are in excess of $28 million, potentially. Clearly, that's a very significant enforcement and compliance tool for the settlement agreement. Penalties go to the government or to the? To the government, Your Honor. What the plaintiffs would get is attorney's fees. That's correct, Your Honor. But they would also have the effect of interfering with EPA's ability to decide when and whether to invoke this conditional waiver to enforce the terms of the settlement agreement. That was a critical part of the agreement. Now, the suit is a challenge in another and broader way, and that is if EPA has determined to resolve a matter consensually in this way, and this was truly a unique matter involving a jurisdictional issue of first impression, the ability of citizens to come in during dependency of operations under the settlement agreement to insist on enforcement of a term that EPA waived in order to induce the consensual settlement agreement clearly will erect a clog to EPA's ability to reach such voluntary settlement. So the deal, if I understand it, is they hold the penalties over your head. That's correct. And make sure you clean up your smelter. That's correct. And if you have to pay the penalties now, then EPA has nothing to hold over your head anymore. That's correct. And in addition, Your Honor. Do I understand this right? That's correct. I'm not really sure I do. The idea is that the penalties have been conditionally waived, conditional on satisfactory performance of the settlement agreement. And if Tech and Tech Comanco American do not satisfactorily perform, EPA can then seek those, revoke the condition in effect, seek those penalties as the price of not complying with the settlement agreement. And so it's holding that enforcement tool under the settlement agreement. Plaintiffs want to step in now, recover those penalties immediately, which clearly would undermine this pivotal provision of the agreement. Is this the reason for, I mean, I'm trying to understand the departure from the more common consent stipulation or agreement, which will have comment and so forth. In this case, you don't have an agreement that's in place. You have sort of a suspension so that if at the end of the time period, EPA doesn't have something, okay, I can enforce it. It has the right to come back and, in effect, reinitiate. It is in suspension. There are two big differences here. This all has to be placed in the context of the jurisdictional issue that ultimately this court resolved against us. But at the time of the settlement agreement, it was unresolved. If you paid all the penalties tomorrow, you lose the case or you just decide to cave, whatever, pay all the penalties tomorrow, would EPA still have a club over your head in case you didn't clean up the smelter the way the agreement says? It would have other enforcement mechanisms, Your Honor. We don't believe that Congress contemplated that double civil penalties payable to the United States could be recovered. What other mechanisms would it have? Well, there are various mechanisms. There's a dispute resolution provision in the agreement that provides for it. They can't send armed people into Canada. No, they can't. Do anything about your smelter. They can't. How do you take your money? It's clear that this is a very powerful. If you pay the penalties tomorrow, can they still come in and take more money from you? Well, they could reinitiate the penalties. I mean, right now we're talking about penalties for a finite past time period. That's correct. So we can always start again and say, okay, here's another UAO from this day forward. The penalties are going to be clear. Right. There are various other means of resolving disputes and enforcement provided in the settlement agreement, but clearly this is a very important one, this reserve power, to invoke this potentially in excess of $28 million in penalties for the previous violation. Could they get penalties for the time after the order was withdrawn? Not for a violation of that order, Your Honor. They could invoke whatever they're certain. If they issued a new order, I suppose you could avoid paying a nickel by complying. Well, that's correct. And the point is that there's an effort to comply with the terms of this settlement agreement, which is the consensual voluntary program that the parties have agreed to. What I don't see here is the EPA in here saying don't do this because it takes the club out of our hand. Well, Your Honor, we prevailed in the trial court, and possibly it would have been certainly something the EPA might have thought it needed to do, but at the present time its discretion is not threatened the way the case stands now. But that's dependent upon us affirming the district court. This is true, Your Honor. It has been known sometimes, rarer to be sure of it, it has been known sometimes that the Ninth Circuit has reversed district courts on environmental cases. I'm all too well aware in my own personal case that this has happened in the past. But the EPA... Do you have any expression by the EPA that says please don't do this because it takes the club out of our hands? Is there any reason we should infer a position on the part of the EPA? No, we have no position by EPA, but I think on the face of it, it's fairly clear that this would have a significant impact. And in addition to that, it would have a much broader impact on the ability of EPA and potentially responsible parties to enter consensual agreements on terms that will lead to a voluntary program. It is the jurisdiction issue that wrinkles this up, because ordinarily you would expect the customary consent judgment route to be followed. We're off that track. We have the suspension situation, and I have to assume it's because we're at the border. That's correct, Your Honor. This unique situation arose from the fact that our client did not believe it was subject to the proper jurisdiction of CERCLA, as asserted by EPA. And we contested that vigorously. We entered this settlement agreement while the issue was still pending, and ultimately it's still open for Supreme Court review. And the genius of this unique agreement was that it achieved EPA's cleanup goals without our client agreeing that it was properly subjected to CERCLA jurisdiction. Understanding that, can you tell me why it is the agreement expressly provides that the rights of other parties are not affected? That provision preserves whatever rights they have on the merits for assertion at an appropriate time. But it does not have anything to do with the jurisdictional bar. Let me stop there, because what you got from an EPA was not actually a release or a waiver. You got a covenant not to sue. This is correct. If you look at paragraph 74, nothing in this agreement is intended to be a release covenant not to sue or compromise. You don't get from the other parties to this agreement what you got from EPA. That is correct, Your Honor, but that question goes to whether they have claims on the merits. It does not go to whether they can assert them now. Why not? Because the jurisdictional bar bars meritorious and unmeritorious claims that challenge EPA's selected remedial action. Well, but you get the jurisdictional bar in a sense only if we understand this agreement to say that this is such an order. But this doesn't mean it would be a lot more persuasive if, in fact, this more clearly indicated that claims of other parties, including citizen claims intended to enforce, were supposed to be affected. But it says something quite to the contrary. Your Honor, I don't think I can improve on what I believe is the correct response to that question, and that is that the preservation of rights, whether they have merit or not, does not affect the timing of the jurisdiction to review those claims. And this suit is a challenge to EPA's selected action. As such, it is barred during the pendency of the amendment. What would be the right timing? After the cleanup is over. And we have many defenses to those claims on the merits, but that is not those matters. Under the Gwaltney case, for example, citizens seeking penalties for holy past violations are improper. But that argument remains for another day. And after the cleanup at the site is over. And this Court's decisions have said over and over again that the point of this jurisdictional provision is broadly to bar challenges to ongoing remedial efforts, selected removal efforts, that EPA has chosen to employ during the pendency of the cleanup effort. And that the time for citizen suits that do challenge EPA action is after the cleanup effort is over. Now, as to the H-2 authorization, just let me say briefly, it does not authorize citizen suits which challenge EPA action as this does. The point of H-2 is to allow the defendant in a proper enforcement action that is not a challenge to EPA action, to challenge the order that is being enforced. And the Rialto case could not be clearer on this. I believe both sides have cited that to the Court in supplemental letters. Thank you, Counsel. Thank you, Your Honor. I believe there was a little time remaining. I only have two points, Your Honor. We'll accord you the time anyway. It's a complicated case. Thank you, Your Honor. On the question of whether or not EPA retains various methods of enforcement if the RAFS agreement is not complied with or not satisfactorily performed, the answer is absolutely yes. There are various ways in which EPA can act. Perhaps the most important is it can issue a new unilateral order, and that really is the ultimate club here. The application of CERCLA is far more important in this case than penalties. Who knows how much the penalties may ultimately be for a multibillion-dollar company. The problem that they have with issuing an order is it may be disregarded by a company in a foreign country. This one may have enough assets in the U.S. so that it really can't afford to blow them off, but others may. That's certainly an enforcement consideration for EPA. It also occurs to me that there's another reason for the government not to take the penalties in midstream, and that is although this company may have plenty of money, others may not, and EPA may want them to keep all their money in the Treasury while they do the cleanup so that they don't go broke on account of penalties until the cleanup is done. There certainly are lots of reasons for why EPA may have done what it did, but it is quite clear that they have no idea what the politics inside EPA are or outside of EPA or what EPA wants. I'm thinking of what would be a rational purpose to attribute to the way the statute is structured. Well, and in that respect, this is quite an anomalous case because, as I think everyone recognizes, most cases like this would be resolved with a consent decree that would have ended all pending litigation, and this one was not through the choice of the parties. And I think fundamental to the choice of the parties was EPA's recognition. If I were in a foreign company in a foreign country, I think I would tell my client, don't sign any consent decree. You could be waiving your jurisdictional objections. Certainly, Tecnico may have had that in mind, and equally EPA may have had the budget considerations that you have described in mind, and those may have been paramount. We just don't know. We have no idea. All we really know is what they did. Trying to figure out how to read the statute. Right, and what they did was allow a lawsuit to go forward and not foreclose it and also not to take action to end it. And so we're left with what does the statute say. And the statute in H-2 is quite clear. It says, suit to enforce penalties. It doesn't say government suit to enforce penalties, and there is no case that would say that a citizen's suit to enforce penalties is any different than a government suit to enforce penalties. I don't understand why Congress would want to allow a citizen suit to enforce penalties to go ahead since the penalties don't go to the citizens. They go to the government. All it means is you can get attorney's fees now instead of later. Well, this is quite an unusual case, but if you looked at the big picture from Congress's point of view, citizen suits are essentially private attorney generals who act for the government. So it makes lots of sense that if there's going to be an enforcement suit for penalties or a 9606A order, that the citizen can enforce it just as much as the government. Down the road, there may be events, agreements, consent decrees that may limit what can be done. But if you're looking at the commencement of suit, there's no reason for Congress to distinguish between the government and a citizen suit enforcement. There is some reason in H4 to focus on citizen suits where they challenge the terms of remedial action, but there is no reason to distinguish in the case of enforcement itself. And I think in most cases, the court wouldn't struggle with that. The only reason there's a struggle today is because Tecumseh resolved this with EPA or made its agreement with EPA without taking on the pending lawsuit that it was forced to defend. And that means that the citizen suit proceeds under subsection H2. That's all I have, Your Honor. Thank you, Counsel. Mercutus v. Tecumseh is submitted.
judges: Alarcon, Kleinfeld, Clifton